Margaret Taylor, J.
On March 23, 1977 a petition was filed in this court alleging that the child "G” had been neglected by her mother "Y.G.”, in that "on or about 3/10/77 respondent mother placed her newborn infant into a waste receptacle at 48 Wall Street, New York and abandoned the infant. Respondent mother received no prenatal care”. The infant was discovered shortly thereafter and was taken to Beth Israel Hospital, where after an examination, she was found to be in good health. On March 23, 1977, while the child was still confined to the hospital, the parties appeared before the Honorable Edith Miller in the Intake Part of this court, where the attorney for the Bureau of Child Welfare (BCW) did not request a remand of the child to the Commissioner of Social Services, but did ask that the caseworker from that *912 agency be permitted to make a home visit to respondent’s home on March 24, 1977. It was the position of BCW that if the report of the caseworker following the home visit was favorable, the child should be released from the hospital to the respondent mother.
The attorney for the respondent mother requested that the court parole the child to the respondent as of March 24, 1977, providing that a favorable report of the respondent’s home was obtained by BCW. The court rejected that application and remanded the child to the Commissioner of Social Services until the hearing date of May 3, 1977, stating that it was the commissioner who should decide whether to release the child to the respondent mother after a home visit was made.
The day following Judge Miller’s order, a BCW caseworker visited respondent mother’s home. Thereafter, BCW arranged to have the infant returned to her mother. Respondent, in turn, agreed to supervision by the Bureau of Child Welfare and the Visiting Nurse Service and to attend a program for counseling.
Since March 24, 1977, the child has been continuously residing at the home of her mother. Respondent has permitted the BCW caseworker to make home visits as frequently as she saw fit. As of the hearing on this motion, eight such visits have been made. Ms. Anne Boyce of the Visiting Nurse Service made five visits to respondent’s home to observe the health, care, and aifectional relationship between respondent, the child who is the subject of this proceeding and respondent’s two-year-old daughter. After these visits, the Visiting Nurse Service informed BCW of its conclusion that its services were not needed by respondent. The Visiting Nurse Service then terminated its visits.
At the request of the BCW, the respondent mother also visited a community mental health center. The project director of the center, who personally interviewed respondent, reported to the BCW that respondent was not in need of any services or assistance from the center.
On May 24, 1977, the parties appeared before this court where the respondent, joined by the attorney for the child, moved to dismiss the petition on the grounds that the petition failed to state a cause of action in that it failed to allege any acts of current neglect by the respondent and in that it failed to state that the court’s aid or assistance was in any way *913 required under subdivision (c) of section 1051 of the Family Court Act.
This court, pursuant to respondent’s notice, held a hearing and examined the record before it and hereby dismisses the petition pursuant to subdivision (c) of section 1051 of the Family Court Act on the ground that on the record before it the aid of the court is not required.
Article 10 of the Family Court Act contains a dual structure, treating abuse proceedings in many cases far more formally than neglect charges. (See, e.g., Family Ct Act, § 1026, subd [a]; §§ 1027, 1049.) The Legislature permits a greater degree of discretion in the handling of neglect cases, where there is less likelihood of imminent risk to a child’s health.
Neglect has two elements. A court must find parental (legal guardian) conduct which threatens to or actually impairs the mental, emotional or physical condition of the child and that the aid or assistance of the court is required. (See Family Ct Act, § 1012, subd [f], par [i], cl [B]; § 1051, subd [c].) Thus, in a neglect proceeding, a fact-finding hearing need not take place if the record establishes that the aid of the court is not required.
Subdivision (c) of section 1051 of the Family Court Act provides: "If facts sufficient to sustain the petition under this article are not established, or if, in a case of alleged neglect, the court concludes that its aid is not required on the record before it, the court shall dismiss the petition and shall state the grounds for the dismissal.” (Emphasis added.)
The purport of subdivision (c) of section 1051 may be arrived at by examining both portions of subdivision (c) and by comparing them to subdivision (a) of section 1051. Subdivision (a) states: "If facts sufficient to sustain the petition are established in accord with part four of this article, or if all parties consent, the court shall, subject to the provisions of subsection (C) of this section, enter an order finding that the child is an abused child or a neglected child and shall state the grounds for the finding.” (Emphasis added.)
Subdivision (a) deals with the circumstances where, prior to the fact-finding hearing, the aid of the court is deemed required, and the court, therefore, proceeds to a fact-finding hearing, facts sufficient to sustain the petition are established and, in a case of alleged neglect, the hearing does not alter the conclusion that the aid of the court is necessary.
*914 The first part of subdivision (c) calls for the dismissal of a case where the court proceeds to a fact-finding hearing and the petitioner fails to prove his or her case.
Thus, subdivision (a) and the first clause of subdivision (c) deal with the disposition of cases subsequent to the conclusion of a fact-finding hearing.
The second part of subdivision (c), beginning with the words "in a case of alleged neglect”, deals with still another circumstance. This portion of the statute makes special provision for the disposition of cases of alleged neglect. It mandates the dismissal of such cases if at any time the court concludes on the record before it that its aid or assistance is not required. Thus, prior to a fact-finding hearing, under subdivision (c) of section 1051 a court must dismiss a petition alleging neglect if it concludes on the record before it that its aid or assistance is not required.
The record before this court demonstrates that respondent and her child are not in need of aid or assistance. Respondent was in every instance receptive to the aid and supervision offered by the BCW, Visiting Nurse Service and Mental Health Services, but in each instance these services were found to be unnecessary. The record before this court contains no allegations of current neglect. The testimony of the BCW caseworker, given at the hearing on this motion to dismiss, and the records of the caseworker and visiting nurse reflect no present neglect but, on the contrary, a normal, healthy and affectionate parent-child relationship. The affidavit of the child’s attorney states that an independent investigation of respondent’s relationship with her two daughters conducted by two social work students revealed a warm and affectionate relationship and no danger of present or future neglect. The affidavits of the detective assigned to investigate this case and respondent’s babysitter, a P.T.A. president and mother of nine, each support that conclusion. Respondent’s employer for the past three years describes her as a competent, diligent, above-average employee. There is no evidence in this record to persuade this court that respondent or her children are presently or will in the future be in need of this court’s aid or assistance.
Accordingly, this court hereby dismisses the petition for neglect pursuant to subdivision (c) of section 1051 of the Family Court Act and awards the custody of the child to the respondent mother.